**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 6, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LOWELL L. MOORE,

     Plaintiff - Appellant,

v.

PHILIPS ELECTRONICS NORTH
AMERICA CORPORATION,

     Defendant - Appellee.

No. 15-3232
(D.C. No. 2:14-CV-02334-DDC)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **PHILLIPS**, Circuit Judges.
_____

Lowell L. Moore, pro se, appeals from the district court's order granting

summary judgment in favor of Philips Electronics North America Corporation

(Philips) on his claims for race discrimination under 42 U.S.C. § 1981 and

retaliatory discharge under Kansas law.  Exercising jurisdiction under 28 U.S.C.

§ 1291, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

*Background*

Mr. Moore, who is African American, worked at the Philips fluorescent lamp production plant in Salina, Kansas, for nearly twenty years until he was terminated on June 15, 2013. His job duties included operating a forklift, loading and unloading trucks, maintaining and removing shrinkage bins, and cleaning and maintaining production equipment.

The Philips employee manual contains a progressive disciplinary plan and steps for reporting workplace incidents. Progressive discipline has four steps from least to most severe: (1) "Written Warning I"; (2) "Written Warning II"; (3) "Final Written Warning, to include suspension when appropriate"; and (4) "Termination." R. at 454. The employee manual, however, permits Philips to vary from the plan or skip disciplinary steps:

> Philips reserves the right to administer appropriate disciplinary action for all forms of disruptive and/or inappropriate behavior. Each situation will be dealt with on an individual basis, based on the facts and circumstances surrounding the infraction. Depending upon the seriousness of the infraction, not all discipline will follow the steps of the [progressive disciplinary plan].

*Id*.

The employee manual further requires that "**[a]ll powered vehicle incidents must be reported immediately to a supervisor regardless of severity.**" R. at 445. It is undisputed that a forklift is a "powered vehicle" and an "incident" is defined as "any contact made with an unplanned object, or a near-miss that may have resulted in contact with an unplanned object. Failure to report such incidents may result in immediate termination per Salina Plant Rules." *Id*. Mr. Moore admitted in his deposition that he

2

was aware of the incident reporting policy and further understood that the failure to timely report an incident could result in termination.

Relevant here, Mr. Moore's direct supervisor was Richard Jester, who in turn reported to Bob Knoth. Dan Mendicina, the plant director, was the final link in the chain of command.

In October 2011, Mr. Moore damaged the floor of the plant while operating a forklift. Instead of immediately reporting the incident, he continued to work with the intention that he would fix the damage later. But before he could carry out his plan, he was approached by his supervisor and confessed. Mr. Moore received a "Written Warning II," which repeated the requirement to immediately report all incidents, and also cautioned him that "[f]urther occurrences may result in additional disciplinary action up to and including termination." R. at 238.

In early April 2013, Mr. Moore got into a heated argument with a Caucasian male co-worker. The incident was so unsettling that a female co-worker immediately went to Mr. Jester for help. When Mr. Jester arrived he found Mr. Moore and his co-worker still arguing. He told Mr. Moore, who had just completed his shift, to go home and calm down, and directed the co-worker, who was starting his shift, to also calm down and get back to work. Mr. Jester conducted an investigation and then met with Mr. Knoth and Bryan Herwig, the company's human resources manager. Mr. Herwig advised him to issue Mr. Moore a "Written Warning II." The April 15 warning stated:

3

> Lowell got into a heated confrontation with [a co-worker] at shift change on Monday night. Lowell raised his voice and was speaking in a loud and threatening manner which was reported as "very disturbing and scary" by other employees in the area. The content of their discussion was over material placement issues which could have been handled through the mastergroup or the supervisors and not in a confrontation on the back end of the line. Lowell has since apologized to [his co-worker] for the way in which he handled the situation.

R. at 61. Once again, Mr. Moore was warned that "[f]urther occurrences may result in additional disciplinary action up to and including termination." *Id.*

What is known as the shrinkage bin incident involved a belated report by Mr. Moore of a near miss incident that allegedly took place sometime in March 2013. The incident was revealed by Mr. Moore in late April 2013, during a meeting with Mr. Herwig about problems he was having with a Caucasian female co-worker. According to Mr. Moore, this woman came dangerously close to grazing his leg with the forklift she was using to pick up a shrinkage bin that he was cleaning. Mr. Herwig spoke with the female co-worker and an alleged witness about the incident. He also spoke to Mr. Jester, who had never been informed of any problem. Ultimately, Mr. Herwig wrote a memo to the file, but took no disciplinary action against either Mr. Moore or his co-worker.

The final incident, and the one that culminated in Mr. Moore's termination, took place near the end of his shift on May 18, 2013. Once again, Mr. Moore damaged the plant with his forklift but failed to promptly report the incident. Instead, he planned to make the repairs himself at a later date, but never got around to it. The incident came to light at the conclusion of a safety meeting on June 6

4

during which Mr. Moore and his co-workers were reminded of the need to report such incidents promptly. Only then did he admit to the May 18 incident. Messrs. Knoth and Mendicina decided to terminate Mr. Moore's employment after receiving a recommendation to that effect from Mr. Herwig. They testified to having no knowledge of the shrinkage bin incident at the time they made their decision to terminate Mr. Moore's job.

*Analysis*

"We review a district court's grant of summary judgment de novo, applying the same legal standard as the district court." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997 (10th Cir. 2011). Mr. Moore, who was represented by counsel, filed suit under § 1981 for race discrimination and retaliatory discharge in response to his report of the shrinkage bin incident.[1] The district court entered a well-reasoned and comprehensive memorandum and order that considered the undisputed evidence presented on summary judgment as it pertained to the elements of Mr. Moore's claims. As to each claim, the court correctly concluded that Mr. Moore needed to come forward with some evidence of pretext, but that he had failed to do so.

Concerning the retaliation claim, "we have recognized that evidence of temporal proximity has minimal probative value in a retaliation case where intervening events between the employee's protected conduct and the challenged

---

[1] Mr. Moore also filed a claim for breach of an implied contract of employment, but his counsel eventually dropped that claim. Mr. Moore argues on appeal that counsel's decision "violates our contract agreement." Aplt. Opening Br. at 4. We do not address this issue because this appeal does not concern claims between Mr. Moore and his former counsel.

employment action provide a legitimate basis for the employer's action." *Id*. at 1001-02. Here, Mr. Moore's alleged protected activity was his report of the shrinkage bin incident to Mr. Herwig in late April 2013. However, some three weeks later, Mr. Moore caused damage to the plant while operating a forklift and failed to timely report the incident. In addition to the fact that neither decision maker had any knowledge of the shrinkage bin incident, this intervening event provided a legitimate basis for the company's decision to terminate Mr. Moore's employment.

As to the § 1981 claim, Mr. Moore argues that he demonstrated pretext because he was disciplined following the heated argument incident, but his Caucasian co-worker was not. This is insufficient to establish pretext. "Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (brackets and internal quotation marks omitted). As we have explained, although "[a] satisfactory showing that similarly situated employees, who do not belong to the protected class, [are] treated differently with regard to violation of a work rule [can] len[d] support to [a] pretext argument," Mr. Moore's argument fails because he "did not show that any other [co-worker] had a record of [forklift incidents] similar to [his] own." *Id*. at 1324.

The judgment of the district court is affirmed.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

6